**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew Oskowis, | No. CV-15-08064-PCT-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Sedona Oak-Creek Unified School District #9, | |
| Defendant. | |

Plaintiff Matthew Oskowis ("Plaintiff") appeals the denial of a due process complaint he brought under the Individuals with Disabilities Education Act ("IDEA" or "the Act"). Plaintiff argues that Administrative Law Judge Tammy L. Eigenheer ("ALJ") erred when she concluded that Plaintiff had failed to establish that his son E.O. was denied a free, appropriate, and public education ("FAPE") as a result of procedural violations in the creation of E.O.'s 2014-15 individualized education program. Plaintiff filed an opening brief on January 25, 2016 (Doc. 22), in which he asserts that "the ALJ's Decision is erroneous, unsupported by the facts, and unsupported by the applicable federal statutes, Code of Federal Regulations, and applicable case law."[1] Defendant Sedona Oak-Creek

---

[1] Prior to filing his Opening Brief, Plaintiff filed a Notice of Manual Filing or Lodging (Doc. 21), which contains a certification of the administrative record on review and an "Index of Record on Review." Although Plaintiff has numbered and titled each document in his Index of Record on Review, the Index is unhelpful to the Court because the numbers in the Index do not correspond with the 108 files on the DVD-ROM disk that Plaintiff manually submitted to the Court, the majority of which are generically labeled, e.g., Exhibit 465836. Defendant did nothing to clarify the Index and instead chose to cite to documents from the administrative record in the manner they were cited in the ALJ proceeding. It is not this Court's duty to parse through administrative records to verify or discount facts. This Court, nonetheless, has done so. Where necessary, the Court has indicated a record

Unified School District #9 ("Defendant" or "District") filed a response (Doc. 24) and Plaintiff filed a reply (Doc. 26). Plaintiff subsequently sought to amend his reply brief (Doc. 27). The Court granted that motion (Doc. 28) and has considered Plaintiff's amended reply brief (Doc. 29) in rendering this ruling. The Court now affirms the ALJ's decision and dismisses Plaintiff's appeal.

**I. Statutory Framework**

IDEA provides federal funds to help state and local agencies educate children with disabilities; the Act in turn conditions this funding on compliance with specific goals and procedures—primarily the agencies' obligation to provide each disabled child with a FAPE. 20 U.S.C. § 1412; *Board of Educ. of Hendrik Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 179-80 (1982) (describing the purpose and primary provisions of IDEA). Among the procedures mandated by IDEA is the development of a written individualized education program ("IEP") for each child with a disability. 20 U.S.C. § 1414(d). A student's IEP is to be "developed, reviewed, and revised" by an "IEP Team" that includes the child's teachers and parents, a representative of the local educational agency, and, "whenever appropriate," the child. 20 U.S.C § 1414(d)(1).

Violations of IDEA may arise in two types of situations. First, a school district can run afoul of the Act's procedural requirements in the creation and implementation of the IEP. *Rowley*, 458 U.S. at 206-07. Second, a school district can be liable for a substantive violation by drafting an IEP that is not reasonably calculated to enable the child to receive educational benefits. *Id*.

The Act provides parents with the opportunity to make complaints when they believe a violation of the Act has occurred. 20 U.S.C. § 1415(b)(6)-(8). After making a complaint, a parent is entitled to "an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A). If either party is dissatisfied with the state educational agency's review, they may bring a

source by the document title and pin-cite notation.

civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A).

**II. Procedural Background**

Under the provisions of the Act, on October 30, 2014, Plaintiff filed a Due Process Complaint against the District that alleged (1) the District denied E.O.'s parents an opportunity to meaningfully participate in the creation of E.O.'s 2014-15 IEP; and (2) that E.O.'s parents were denied their ability to exercise certain "procedural safeguards" because the District failed to include a copy of the IEP with the issuance of its August 15, 2014 Prior Written Notice ("PWN"). By way of relief, Plaintiff demanded "another annual IEP created that would be an actual 'new' creation that is worked out in its entirety and not in piecemeal fashion," and specifically to have "an independent third-party trained facilitator" assist with the process, which he wanted to occur over "at least three two-hour meetings."

On January 30, 2015, a hearing on Plaintiff's Complaint was held before the ALJ. Plaintiff appeared on his own behalf and was accompanied by Parent T.M. (collectively, "Parents"). The ALJ heard and considered the testimony of Scott Keller, Special Education Director ("Director"), Joe Donaldson, Special Education Consultant ("Consultant"), and Rebecca Belanger, E.O.'s Special Education Teacher ("SET"). Parents did not testify. The ALJ also considered the parties' closing arguments and respective supplemental briefings in rendering her decision.

On March 27, 2015, in a 12-page Order, the ALJ denied the relief requested in Plaintiff's Complaint, finding that Parents had ample opportunity to meaningfully participate during the meetings regarding E.O.'s 2014-15 IEP (hereafter "ALJ Decision"). The ALJ found that Parents were physically present at these meetings and participated through discussion and questions raised. (*Id.*) She also found that the District's failure to include a copy of the August 14, 2014 IEP with its August 15, 2014 PWN did not render the final 2014-15 IEP invalid or incomprehensible. (*Id.*) She further found that Plaintiff's proposed relief—"that a new annual IEP be created under the direction of an independent third-party trained facilitator during at least three two-hour meetings"—had "no relation to the alleged violation in that Petitioners have not raised any substantive issues with the final

2014 – 2015 IEP." (*Id.*) The ALJ accordingly denied the requested relief. (*Id.*)

Plaintiff filed this appeal on April 27, 2015. (Doc. 1). Therein, Plaintiff contends the ALJ erred in finding that Parents meaningfully participated in the creation of the 2014-15 IEP; and the implementation of E.O.'s 2014-15 IEP in piecemeal fashion was reasonable under the circumstances. For relief, Plaintiff requests the same "relief requested in the aforementioned Due Process Complaint," costs, expenses and attorneys' fees, and other relief as this Court deems just and proper. (Doc. 1 at 12).

For the following reasons, the Court finds that Plaintiff's appeal is without merit and affirms the decision of the ALJ.

**III.      Standard of Review**

Once in federal court, the moving party bears the burden of proving that the ALJ's decision was not met by a preponderance of the evidence. *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 908–10 (9th Cir. 2008). In assessing an appeal, the Act mandates that a court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); *see also R.B. v. Napa Valley Unif. Sch. Dist.*, 496 F.3d 932, 937 (9th Cir. 2007) (same). So that courts do not "substitute their own notions of sound educational policy for those of the school authorities which they review," *Rowley*, 458 U.S. at 206, the administrative proceeding below is to be afforded "due weight." *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 817 (9th Cir. 2007) (noting "complete de novo review of the administrative proceeding is inappropriate"). Nonetheless, courts assessing IDEA appeals are to give "less deference than is conventional" in review of other agency actions. *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993) (stating that "judicial review in IDEA cases [are to] differ[ ] substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review"). "How much deference to give state educational agencies, however, is a matter for the discretion of the courts." *Gregory K. v.*

*Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987). Where the ALJ's findings are "thorough and careful," the amount of deference to the ALJ increases. *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995); *see also Cty. of San Diego v. California Special Educ. Hrg. Off.*, 93 F.3d 1458, 1466 (9th Cir. 1996) (noting that an ALJ decision should be given "substantial weight" when "when it evinces [] careful, impartial consideration of all the evidence and demonstrates [] sensitivity to the complexity of the issues presented") (internal citation and quotations omitted)).

Here, the ALJ issued her decision in a 12-page, detailed opinion that reflects that careful thought was given to the issues raised by Plaintiff. To the extent there were alleged discrepancies in testimony and evidence, the ALJ addressed them in her Decision. (*See e.g.*, Decision at 7 ¶ 21). The ALJ states that she considered all of the exhibits that were offered by the parties and admitted into evidence, as well as the testimony given by the three witnesses that appeared. (*Id.* at 3, n. 5). Her Decision supports this statement. At times, the ALJ asked her own questions of the testifying witnesses to clarify the record and facts. (*See e.g.*, Reporter's Transcript of Proceedings, dated Jan. 30, 2015 ("Tran.") at 49:16-18; 49:22-25; 50:2-4; 57:11-12). As discussed *infra*, the ALJ also applied the correct legal standards in determining whether the District's implementation of E.O.'s IEP amounted to a deprivation of E.O.'s right to a FAPE. Finally, after this Court's review of the administrative record, it appears that the ALJ accurately and impartially described the background of events and facts related to the creation of the 2014-15 IEP in a manner that is supported by a preponderance of the evidence.

In light of this careful decision making, this Court will afford the ALJ's decision substantial weight.

**IV. Factual Background**

As in the ALJ proceeding, the issues Plaintiff raises on appeal relate solely to the way E.O.'s 2014-15 IEP was created and have nothing to do with the ultimate substance of the educational program. As such, the Court has carefully reviewed the chronology of

events leading up to the finalization of E.O.'s 2014-15 IEP.[2]

E.O. has received special education services since he was diagnosed with classical infantile autism on March 23, 2006. (*See generally* Doc. 1). He was eleven (11) years old and attending the fourth grade at West Sedona School in the Sedona Oak-Creek Unified School District #9 at the time Plaintiff filed his Complaint with this Court. (Doc. 1 ¶¶ 39, 42).

In 2014, E.O.'s IEP Team, which included Parents, SET, and Director, first met on May 15, 2014, to begin discussing E.O.'s 2014-2015 IEP. Exhibits entered at the hearing before the ALJ reflect that Parents provided the District with suggested goals and objectives for E.O. during the 2014-15 school year at this meeting. The Director, who took notes at the May meeting, testified that there was extensive discussion regarding Parents' suggested goals and objectives at this meeting. The record also reflects that Parents continued to have parent-teacher meetings with District representatives over the summer months, during which they discussed E.O.'s progress with regard to his 2013-14 IEP goals. There is some unclarity as to whether these meetings were "IEP" development meetings or just standard parent-teacher meetings, but the Court finds that regardless of their characterization, the substance of these meetings, which addressed E.O.'s development and needs over the summer months, was ultimately relevant to the substance of E.O.'s 2014-15 IEP and thus notes them here.

The first of two meetings the parties refer to as "IEP Team meetings" was scheduled for August 12, 2014. On August 10, 2014, Director emailed Parents with a draft of E.O.'s Present Levels and Functional Performance ("PLAFFP") and Goals for the 2014-15 IEP. Director asked Parents to "provide parental input on the sections labeled Parent Input on Student's current academic and functional achievement" so that "[t]he teacher can include that information into the draft and the team can hear from you during the meetings." The SET also provided an update of E.O.'s Assessment of Basic Language and Learning Skills ("ABBLS") to Parents on August 10, 2014.

---

[2] Plaintiff does not take issue with any of the ALJ's findings of fact as they relate to the events leading up to the creation of the 2014-15 IEP.

- 6 -

As indicated, in preparation for this meeting, the SET prepared a draft of E.O.'s 2014-15 IEP ("the 8/12 Draft IEP"). On August 11, 2014, Director emailed the 8/12 Draft IEP to Plaintiff, along with copies of datasheets of E.O.'s performance from March 2014 through May 2014. Director stated in his email to Plaintiff that the 8/12 Draft IEP did not include certain sections of the IEP.[3] Director testified that everyone understood that it was not anticipated that the Team would get through each section during the August 12 meeting and would complete it at a subsequent meeting that was noticed for August 19.

As scheduled, the Team met on August 12, 2014 to discuss and finalize portions of E.O.'s 2014-15 IEP. The Team only discussed and covered some of the required portions of the IEP; they specifically did not cover accommodations or special education services at this first meeting. All evidence in the record, including Plaintiff's own statements, indicates that everyone understood that two meetings would be needed to finalize the 2014-15 IEP. Indeed, a subsequent meeting to complete the unfinished portions had already been scheduled for August 19, 2014. Substantial discussions were had at the August 12 meeting about the goals included in the 8/12 Draft IEP. In the end, eight of the fourteen goals in E.O.'s 2014-15 IEP were adopted from those suggested by Parents at the May 15, 2014 IEP meeting.

What occurred next seems to be the focus of Plaintiff's objections. Following the August 12 meeting, on Friday, August 15, 2014, the District issued a Prior Written Notice to Parents (Prior Written Notice dated August 15, 2014 ("PWN")).[4] The PWN stated in

---

[3] In his opening brief, Plaintiff contends that the District presented "false and misleading evidence" during the hearing when the District offered a version of the 8/12 Draft IEP that included the last two pages of a draft IEP. (Doc. 22 at 5). Plaintiff argues that had he not "brought the difference between [the 8/12 Draft IEP that was sent to him and the District's proposed exhibit] to light," the ALJ would have "certainly [been] misled." (*Id*.) The Court finds the ALJ was not misled. No one disputed that the 8/12 Draft IEP sent to Plaintiff on August 11, 2014 was incomplete; indeed, the District conceded as much. The Director reasonably explained that the differences in the exhibits was likely due to what browser and printer were used to print off the document because set defaults affected what information gets printed from the program. (Decision at 7, ¶ 21).

[4] The IDEA requires state educational agencies to provide parents of a child covered by the Act written prior notice whenever the local educational agency "(A) proposes to initiate or change; or (B) refuses to initiate or change, the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to the child." 20 U.S.C. § 1415(b)(3).

- 7 -

part:

> The IEP team convened to initiate a review of [E.O.'s] IEP. The annual IEP is due to August 15, 2014 and the IEP will be implemented as written. An additional review of the IEP is scheduled for the following week. Items reviewed after the implantation date, [sic] will be documented in an addendum to the IEP. The district's responsibility is to implement an annual IEP and permit full participation of all members of the team in the review/revision process…In order to meeting these responsibilities, the initial review and changes will be include[d] in the annual IEP. Those sections of the IEP scheduled for review during the week of the 18th meeting with be documented in an addendum, as warranted.

The District did not attach an IEP to the PWN.

School started on Monday, August 18, 2014. Because the portion of E.O.'s IEP relating to special education services for 2014-15 had yet to be finalized at the August 12 meeting, the District testified, and Plaintiff does not contest, that from August 18 – 20, 2014, E.O. received the same room, services, and one-on-one aide or teacher as he had received during the 2013-14 year. (Decision at 6, ¶ 18). The District, however, stated that on August 18, 2014, it implemented the new goals that were agreed upon in the August 12 meeting. (*Id*.)

Sometime after the parties scheduled the August 19 follow-up IEP meeting, the SET suffered a death in her family and went on unplanned bereavement leave though Tuesday, August 19. Director informed Parents that the SET would be unable to attend the previously-scheduled August 19 meeting, and asked whether Parents wanted to keep the meeting time and convene without her or delay the meeting by a day so that she could attend. Parents opted to delay the meeting until August 20 so that the SET could attend. Plaintiff also requested an updated draft of the 2014-15 IEP prior to the August 20 meeting. Upon her return from bereavement, the SET sent Parents an updated draft of the IEP.

On August 20, the IEP Team, including Parents, reconvened to finalize E.O.'s 2014-15 IEP. Some minor changes were made to the goals agreed upon at the August 12 meeting. The Team also went through and finalized the remaining portions of the IEP, including adoption of the accommodation section in the 8/12 IEP Draft, and adoption of

the special education services to be provided, which included the same number of minutes as were provided in the 2013-14 IEP, but contained fewer, but broader categories. Another PWN and the final IEP were sent to Parents on August 29, 2014.

Plaintiff does not contest that the 2014-15 IEP that was finalized and agreed upon at the August 20 meeting was the operative educational program for E.O. during the 2014-15 school year. Plaintiff makes no complaint as to the substance of the IEP.

**V. Analysis**

A court tasked with analyzing whether a state agency has adequately provided a student a FAPE must conduct a two-part inquiry. *Doug C. v. Hawaii Dept. of Edu.*, 720 F.3d 1038, 1043 (9th Cir. 2013). First, a court must consider whether the state has complied with the Act's procedural requirements. *Id.* "Second, [a court] must determine whether the IEP is 'reasonably calculated to enable the child to receive educational benefits.' *Id.* (quoting *Amanda J. v. Clark Cnty. Ch. Dist.*, 267 F.3d 877, 890 (9th Cir. 2001). "A state must meet both requirements to comply with the obligations of the IDEA." *Id.* (noting that "[w]here a court identifies a procedural violation that denied a student a FAPE, the court need not address the second prong").

"'[P]rocedural inadequacies that result in the loss of educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of FAPE.'" *Shapiro*, 317 F.3d at 1079 (*quoting W.G. v. Bd. of Trs. of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir. 1992)). The Ninth Circuit has stated, however, that "[h]armless procedural errors do not constitute a denial of FAPE." *Id.*; *see also L.M.*, 556 F.3d at 910.

Plaintiff's appeal does not raise issues as to whether E.O.'s 2014-15 IEP was reasonably calculated to enable E.O. to receive educational benefits; as noted by the ALJ, at no time has Plaintiff identified or argued "any substantive shortcomings with the 2014-2015 IEP as ultimately developed and adopted." (Decision at 7 ¶ 20). Plaintiff does, however, challenge the ALJ's findings with regards to whether the District complied with certain procedural requirements in the creation of E.O.'s 2014-15 IEP. Plaintiff first

contends the ALJ erred in finding that Parents had an opportunity to meaningfully participate in the creation of the 2014-15 IEP. He then contends that the ALJ erred when she concluded that the District's implementation of E.O.'s incomplete IEP on August 15, 2014, and subsequent finalization of the IEP on August 20, 2014, was reasonable under the circumstances. The Court will address each of these arguments in turn.

## A. Meaningful Parental Participation

Parental participation in the creation of a student's IEP is widely considered to be one of the most critical procedural safeguards in the IDEA. *See* 20 U.S.C. § 1414(d)(1)(B)(i) (requiring the inclusion of parents on the IEP team); 34 C.F.R. § 300.321(a)(1) (same); *see also* 20 U.S.C. § 1415(b)(1) (requiring opportunities for parents "to participate in meetings with respect to identification, evaluation and educational placement of the child"). Indeed, courts have repeatedly held that parental participation safeguards are "[a]mong the most important procedural safeguards" in the IDEA and that "[p]rocedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA." *Amanda J.*, 267 F.3d at 882, 892. The Ninth Circuit has explained that parental participation is key to the operation of the IDEA for two reasons: "Parents not only represent the best interests of their child in the IEP development process, they also provide information about the child critical to developing a comprehensive IEP and which only they are in a position to know." *Id.* at 882.

To ensure compliance with this important mandate, "the regulatory framework of the IDEA places an affirmative duty on agencies to include parents in the IEP process." *Doug C.*, 720 F.3d at 1044. The responsible public agency is required to "take steps to ensure that one or both of the parents of a child with a disability are present at each IEP meeting or are afforded an opportunity to participate" including "[n]otifying parents of the meeting early enough to ensure that they will have an opportunity to attend" and "[s]cheduling the meeting at a mutually agreed on time and place." 34 C.F.R. § 300.322(a).

Plaintiff contends that Parents were merely provided "perfunctory parental participation" in the creation of E.O.'s 2014-15 IEP. (Doc. 22 at 6). The record does not

support this contention. The first IEP meeting to discuss E.O.'s 2014-15 IEP took place in May 2014. Both the meeting notice and the PWN for this May meeting reflect that Parents were in attendance and participated in discussions regarding aspects of the IEP. Discussions of E.O.'s 2014-15 IEP then continued during the IEP Team meeting held on August 12, where the Team completed line reviews of E.O.'s PLAFFP and updated goals. The IEP Team then finalized the areas that were not reached at the August 12 meeting at the August 20 meeting, in which Parents again participated. In addition to the meeting summaries, the final substance of the 2014-15 IEP itself reflects Parents' substantive input: at least eight of the fourteen goals the Team ultimately approved for E.O.'s 2014-15 IEP were suggested by Parents at the May 2014 meeting. In short, there were no meetings regarding E.O.'s IEP that the Parents were not involved in. Nothing in the evidence suggests that Parents were excluded from the process, received insufficient notice of the meetings, or that Parents' input was not considered by and discussed with the rest of the Team. As such, the record belies any contention from Plaintiff that Parents were not provided the opportunity to meaningfully participate in the creation of E.O.'s 2014-15 IEP.

Plaintiff has not met his burden of showing beyond a preponderance of the evidence that the ALJ erred in finding that Parents were given the opportunity to meaningfully participate in the creation of E.O.'s 2014-15 IEP.

**B. Implementation of an Incomplete IEP on August 15, 2014**

Parent next contends that the District implemented an incomplete IEP "in violation of IDEA" when the District issued a PWN on August 15, 2014 (before the Team's August 20, 2014 meeting that finalized E.O.'s 2014-15 IEP) because the August 15 PWN noted that the IEP would be implemented "as written". (Doc. 22 at 5). The ALJ found that the District "made a reasonable decision under the circumstances and based on prior experience to implement E.O.'s goals that had already been agreed upon at the August 12, 2014 IEP meeting and to allow the IEP team to consider the remaining portions of the IEP at the August 20, 2014 IEP meeting." (Decision at 10, ¶ 10). Plaintiff contends that the ALJ applied an erroneous standard, arguing that "the question before the Court is not what

is '*reasonable*' but what is '*lawful*'." (Doc. 26 at 2 (emphasis in original)). The Court disagrees.

The IDEA mandates annual review of a student's IEP. *See* 20 U.S.C. § 1414(d)(4); 34 C.F.R. § 300.324(b)(1)(i). E.O.'s annual IEP review date was August 15.[5] The parties do not dispute that E.O.'s IEP was incomplete on August 15, 2014. All parties had agreed that a second meeting beyond the August 15 deadline would be needed to finalize E.O.'s IEP. Director testified that Parents had rejected the District's request that E.O.'s IEP deadline be extended, a fact that Plaintiff does not dispute. The District testified that by issuing the PWN on August 15, 2014, it was trying to meet the annual deadline while simultaneously trying to ensure that Parents and other members of the IEP team were meaningfully involved in the creation of E.O.'s final IEP. Plaintiff contends that when the District issued the August 15 PWN, which stated that the IEP would be implemented "as written," the District revealed that it had "pre-determined the IEP before the August 12, 2015 IEP Meeting" thus undermining any real parental input. (Doc. 22 at 7). The District strongly disagrees and points to language in the August 15 PWN that it says reflects that E.O.'s 2014-15 IEP had yet to be finalized and would be supplemented by addendum after another Team meeting during the week of August 18. The District contends that under the circumstances, its partial implementation of E.O.'s IEP on August 18, followed by the complete implementation three days later, was reasonable and did not deprive E.O. a FAPE. The ALJ agreed with the District and this Court does too.

The Ninth Circuit has held that "[w]hen confronted with the situation of complying with one procedural requirement of the IDEA or another…[an] agency must make a reasonable determination of which course of action promotes the purposes of the IDEA and is least likely to result in the denial of a FAPE. In reviewing an agency's action in such a scenario, [courts] will allow the agency reasonable latitude in making that determination." *Doug C.*, 720 F.3d at 1046.

---

[5] There is evidence in the record that indicates August 19, not August 15 was E.O.'s IEP annual review deadline, but that in an abundance of caution, and based on its prior experience with Parents, the District utilized the earlier date to avoid claims of untimeliness. (*See* Decision at 5, n.11).

- 12 -

In *Doug C.*, the agency was presented with a very similar dilemma to the one faced by the District here: conduct IEP meetings with parental input but miss the annual IEP deadline by several days, or proceed with the IEP meeting without the participation of the parent and meet the annual deadline. *Doug C.*, 720 F.3d at 1046. The agency there opted to proceed *without* the parent's participation in order to meet the deadline, a decision the court found "clearly not reasonable." *Id*. at 1046. In so finding, the court stressed the vital importance of parent participation in the IEP creation process, and stated that although there may be "circumstances in which accommodating a parent's schedule would do more harm to the student's interest than proceeding without the parent's presence at the IEP," it believed that "such circumstances will be rare given the central role parents have in helping to develop IEPs." *Id.* at 1046-47.

Here, a preponderance of the evidence supports the ALJ's finding that the District was reasonable in delaying the implementation of a final IEP by three school days to ensure all sections of the IEP were thoroughly discussed with Parents and the rest of the IEP Team. Plaintiff infers nefarious intent on District's behalf by issuing the August 15, 2014 PWN. His argument, however, necessarily cherry-picks language from the August 15 PWN and ignores the rest of the PWN, which clearly contemplates that additional IEP Team meetings with Parents were contemplated before E.O.'s IEP would be finalized. Specifically, the August 15, 2014 PWN states in no uncertain terms that

> Public education agencies have an affirmative obligation to implement an annual IEP, while permitting full participation in the review and revision of the document. In order to meet these responsibilities, the initial review and changes will be included in the annual IEP. *Those sections of the IEP scheduled for review during the week of the eighteenth meeting will be documented in an addendum as warranted.*

(August 15, 2014 PWN (emphasis added)).

The record shows that Parents had notice of this second meeting prior to the August 15, 2014 PWN being issued and were well-aware and in agreement with the District that the IEP would not be finalized on August 12. Plaintiff nonetheless contends, without citing to authority, that the District had "no obligation" to hold the subsequent meeting after

- 13 -

issuing the August 15 PWN.  Even crediting Plaintiff's argument as true, the record shows that the District *did* in fact hold such a meeting; Parents *did* in fact attend and participate at the second meeting; and the IEP Team *did* in fact finalize E.O.'s 2014-15 IEP on August 20, 2014 – a final IEP to which Plaintiff has no substantive objections.

In short, nothing stemming from the District's partial implementation of E.O.'s 2014-15 IEP on August 15 deprived E.O. of a FAPE for the 2014-15 school year.  In the three school days before the IEP was finalized, E.O. continued to receive the special education services he had been receiving under his 2013-14 IEP.  Plaintiff does not object to any deficiencies in these services or contend that they differed so much from what was to be provided to E.O. in 2014-15 that even in the short time before the complete 2014-15 IEP was implemented, their difference deprived E.O. of an educational benefit.  *Amanda J.*, 267 F.3d at 892.  *See also A.M. v. Monrovia*, 627 F.3d 773, 779 (9th Cir. 2010) ("Whether or not Defendant exceeded the thirty-day limit, A.M. suffered no deprivation of education benefit and therefore has no claim."). Unlike what would have been a "clearly unreasonable" decision to exclude a parent in order to meet an annual deadline, the District here delayed finalizing E.O.'s 2014-15 IEP by three days so that all interested parties, including Parents, could thoroughly participate in its development.  *Doug*, 720 F.3d at 1046.  This decision meant that the District would be out of compliance with its obligation to conduct an annual review by August 15.  In what appears to be a showing of good, not bad faith, the District attempted to record the fact that a review of E.O.'s IEP was ongoing by issuing the August 15, 2014 PWN.  The plain language of the PWN reflects that additional review was scheduled and would be incorporated into the IEP by addendum. Indeed, the evidence shows that the District, under the circumstances, made a reasonable determination that the three-day delay in complete implementation of E.O.'s 2014-15 IEP would be the course of the action that most promoted the purposes of the IDEA and was least likely to result in a denial of a FAPE to E.O.  *Doug C.*, 720 F.3d at 1046 ("[w]hen confronted with the situation of complying with one procedural requirement of the IDEA or another. . . [an] agency must make a reasonable determination of which course of action

promotes the purposes of the IDEA and is least likely to result in the denial of a FAPE"). Plaintiff's objections therefore have no merit.

### VI. Conclusion

The ALJ's findings regarding the development and creation of E.O.'s 2014-15 IEP are supported by a preponderance of the evidence in the record. The evidence reflects that Parents were afforded a meaningful opportunity to participate in the development of E.O.'s IEP and that the District's decision to only partially implement the IEP prior to its finalization was reasonable under the circumstances. Because Plaintiff has not established by a preponderance of the evidence that the ALJ erred in her findings as to the reasonableness of the District's implementation of E.O.'s 2014-15 IEP, he has not met his burden of proof, and his appeal must be dismissed.

**IT IS ORDERED AFFIRMING** the ALJ Decision of March 27, 2015 and **DISMISSING** Plaintiff's Administrative Appeal. The Clerk shall enter judgment accordingly.

Dated this 25th day of February, 2019.

Honorable Diane J. Humetewa
United States District Judge